## TRUSTEES OF R. E. BANK vs. BOZEMAN ET AL.

The Real Estate Bank brought an action at law, on a protested foreign bill of exchange, against the acceptor and endorsers, who pleaded *non assumpsit*, but afterwards filed their plea, *puis darrien continuance*, that the plaintiff had assigned the bill to certain Trustees. Upon a bill in chancery by the Trustees, for the recovery of the bill of exchange, HELD: That the endorsers were not estopped by the plea, *puis darrien continuance* in the case at law, from objecting want of notice of non-payment and protest.

A defendant in chancery, legally served with process to appear, is bound to take notice of any subsequent amendment of the bill, and answer any material allegation, and if he fails to do so, the complainant is entitled to a decree *pro confesso*.

But if the complainant does not prosecute his bill with due diligence against a defendant failing to answer — as where he does not take a decree pro confesso against him, — and proceeds against the other defendant, and upon the merits, he is not entitled to a decree against the defendant answering, the court may well dismiss the bill as to all.

### *Appeal from Pulaski Circuit Court in Chancery.*

The Hon. WILLIAM H. FEILD, Circuit Judge.

PIKE & CUMMINS, for the appellant. The question which we present is, whether it was necessary to aver or prove the fact of notice, and whether Bozeman can be allowed, after his plea *puis*

*darrien continuance,* to insist that there was no notice given to him.

The plea *puis darrien continuance* waived all previous pleas, and every thing is confessed except the matter contested by the plea *puis.* *Morris vs. Cook,* 19 *Wend.* 699; 2 *Wend.* 300; 10 *Wend.* 675; 14 *Wend.* 161; 1 *Salk.* 178; *Cro. Eliz.* 49. The suit in chancery is in the nature of an equitable *sci. fa.* to revive and continue the suit against the defendants, in the names of the trustees, and Bozeman could not avoid his *confession* of the issue, which he had made when he filed his plea *puis darrien continuance.* As to the effect of confessions and admissions, see 1 *Greenl. Ev.'* sec. 27, 169; 1 *Mees. & Wels.* 508; *Gresley on Eq. Ev.* 349; 2 *Cowens Phill. n.* 192, 331.

CURRAN, contra. Admitting that the plea *puis darrien continuance* in the suit at law, was a waiver of the previous pleas, and that if the matter of the plea *had been determined* against the pleader, it would have been a confession of the matter in issue, contended that if the chancery suit were a continuation of the suit at law, the defendant is not estopped by the plea, because it was not determined against him. *Bac. Abr.* 479; *Cro Eliz.* 49; *Yelv.* 181. That if the plea had been adjudged insufficient, the defendant was not precluded from relying on the defence of want of notice in his answer, and referred to the case of *Heyfron et al. vs. The Miss. Union Bank,* 7 *Sm. & Mar. Rep.* 434, decided upon a statute like that of this State allowing the defendant to plead as many pleas as he may think proper; and denied that any confession or admission in pleading, would conclude Bozeman from denying, in another action, the want of notice.

Hon. S. H. HEMPSTEAD, special Judge, delivered the opinion of the Court.

The object of this bill was to obtain payment of a bill of exchange, drawn by Gray and Turner on Simeon Buckner, the 1st of May, 1840, payable nine months after date, at the Canal and

'318          CASES IN THE SUPREME COURT

Trustees of R. E. Bank vs. Bozeman et al.          [JULY

Banking Company, New Orleans, Louisiana, which was accepted by Buckner, endorsed by Michael Bozeman and Radford McCargo, and discounted by the Real Estate Bank, for the benefit of Buckner; and was protested for non-payment. The bill was for the accommodation of Buckner.

On the 17th of July, 1841, suit was instituted on the bill, in Pulaski Circuit Court, against all the parties, by the Bank, as holder and endorsee, and afterwards the defendants Gray, Turner, Buckner, Bozeman and Mc Cargo, plead non-assumpsit to the action; and issue was made up on that plea. At the September Term, 1842, all the defendants pleaded *puis darrien continuance*, that after the commencement of the suit, the bank had assigned the bill to trustees; to which the bank replied, that the bill was assigned by deed and not otherwise; to which replication the defendants demurred. No further step seems to have been taken in this suit; but it is alleged that, by consent of parties, it was to stand and abide the decision of the Supreme Court on a similar replication in another suit. This however is denied in the answer of Bozeman, and not proved. As held in *Buckner vs. Real Estate Bank*, 5 *Ark.* 536, this was a good replication and sufficient to avoid the plea; and if the case had progressed, the demurrer must have been overruled. *Biscoe vs. Sneed*, 6 *Eng.* 104.

On the 2d of April, 1842, while that suit was pending, the bank assigned all her assets, choses in action, property and effects to trustees, (*Conway Ex parte*, 4 *Ark.* 302;) and on the 29th of July, 1845, the corporate franchises of the bank, on a writ of *quo warranto*, were, by the definitive judgment of this court, declared forfeited and seized into the hands of the State. *The State vs. The Real Estate Bank*, 5 *Ark.* 595. Thus ended her corporate existence, and she was no longer able to sue in her own name.

The trustees, having no adequate remedy at law, were obliged to resort to a court of chancery, and accordingly the present bill was filed, on the 2d of January, 1845, and was subsequently amended, which was answered by Bozeman only; and the case was

heard on the bill, answer, replication and exhibits, without testimony ; and the bill was dismissed.

The principal question is whether the complainants were entitled to relief, as against the endorsers, without averment and proof of notice.

For the complainants, it is insisted, that the plea of non-assumpsit in the suit at law, put in issue the fact of protest and notice, and that the effect of the plea, *puis darrien continuance*, was to displace that plea, and leave only the single issue as to assignment after suit instituted. In other words, that it operated as an admission of notice, and that the parties are estopped from setting up that defence in this suit. Where the plea *puis darrien continuance* goes to the whole action, there can be no doubt that it is a waiver of previous defences ; and that by operation of law every-thing is confessed, except the matter contested by the plea *puis*. 1 *Salk.* 178 *;* 1 *Ld. Raym.* 693 *;* 2 *Wend.* 300 *;* 10 *Wend.* 680 *;* 19 *Wend.* 699.

The reason of the rule, originally, was to attain singleness of issue, and prevent prolixity and confusion in pleading; but it never was any thing else than a strict technical rule, and as such has been maintained. As an admission in the suit, in which it was interposed, it was doubtless equivalent to proof of the fact admitted. But when we come to apply it in another proceeding, and to claim that the party is equally estopped by it, quite a different question is presented.

Now it is to be remarked that estoppels are not favored ; because the truth may be excluded, (4 *Mass.* 181 ; 1 *Greenl. Ev.* 22,) and more especially where the effect would be to prevent a just defence.

And it sounds strangely in a court of equity, to hear a technical estoppel insisted on, to make out a case against a surety, as Bozeman appears to have been in this affair.

It is no doubt perfectly correct doctrine, that a party, who puts himself on one issue, admits all the rest, and could not controvert such admission by proof. It is called an admission in pleading;

and becomes effectual in the suit in which it was made, but certainly, on neither principle nor authority, could it be used as evidence in another suit or proceeding. And to make the principle applicable, it is contended by the counsel of the appellants, that this suit is in the nature of an equitable *sci. fa.* to revive and continue the suit against the defendants in the name of the trustees. But we think it must be regarded, as a regular bill in chancery, praying discovery and relief; and the gravamen of which is the collection of the bill of exchange. It necessarily contains a history of the proceeding at law, and the extinction of the corporate existence of the bank, and the failure of the remedy at law, as a reason for coming into a court of chancery, and without which indeed there would be a clear want of jurisdiction. 6 *Eng.* 113. We are not able to regard this proceeding as a mere continuation of the suit at law; because, to say nothing of the anomalous character of such a proceeding, — partly at law and partly in chancery—no authority has been produced to show that it should be so treated; and it seems to us that it would be impossible to view it as a part of the other proceeding, without disregarding plain and well established principles of law.

It is then a separate and independent suit in chancery, brought in consequence of the abatement of the other; and whatever admission might have been made, in pleading, in that suit, it cannot be used as evidence in this. It follows that Bozeman was not estopped from showing that he did not owe the debt demanded; and as notice to him was neither averred nor proved, and moreover was expressly denied by him, the dismissal of the bill, as to him, was proper and correct.

Notice of the dishonor of a foreign bill, is necessary to charge either the drawer or endorsers with its payment; and if it is not duly given, they will be discharged from all liability. *Story on Bills* 381. And the protest and notice are material averments; and an omission to aver notice, or some excuse for failing to give it, is said to be fatal even after verdict. *Chitty on Bills* 576; *Rushton vs. Aspinall, Dougl.* 679; 7 *East* 231.

For this reason, no decree could be had against Gray and Mc-Cargo, on the original bill, because it was silent as to notice. Independent of that, McCargo was not served with process in such manner as to make him a party to the suit. No decree *pro confesso*, was taken against either of them. But Gray was regularly served with process; and although there did not appear to be any equity against him on the original bill, yet an amendment was filed averring that the bill of exchange was drawn, accepted and endorsed by the parties, with a full knowledge that Buckner had not, nor would have, funds in New Orleans, to meet it at maturity ; that the drawers had no funds in the hand of Buckner, or at the Canal and Banking Company, to meet the bill. This allegation as to a want of funds, was met by the answer of Bozeman, and not being proved could not affect him. But Gray, who was one of the drawers of the bill, and on whom a subpœna in chancery had been duly executed, was bound to answer it without any new subpœna. *Digest* 233. Having failed to do so, the complainants were entitled to a decree *pro confesso* against him, if they had sought it at the proper time. But they suffered the case to progress to a hearing as to others, without asking it, although nearly two years had elapsed from the filing of the amendment. In fact, they appear to have abandoned the prosecution of the suit, as to all parties except Bozeman ; and as it is competent for a court to dismiss a bill, which has not been prosecuted with due diligence, we think on the whole case that the decree ought to be affirmed. Affirmed.

Mr. Chief Justice WATKINS not sitting in this cause.